**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          ehorne@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MARQUEZ, individually and on behalf of all others similarly situated,<br><br>                                      Plaintiff,<br><br>       v.<br><br> RACK ROOM SHOES, INC.,<br><br>                                      Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Michael Marquez ("Plaintiff") on behalf of himself and all other persons similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.    This is a class action suit brought on behalf of all persons who have visited rackroomshoes.com.

2.    Rack Room Shoes, Inc. ("Defendant" or "Rack Room Shoes") is a shoe store "offer[ing] a great variety of on-trend styles for women, men and children in athletic, comfort and dress categories."[1]

3.    Defendant aids, employs, agrees with, and conspires with a third party, Meta Platforms, Inc., ("Facebook") to eavesdrop on communications sent and received by Plaintiff and Class members, including communications that contain their personally identifiable information. Plaintiff brings this action for legal and equitable remedies resulting from these illegal actions.

## PARTIES

4.    Plaintiff Michael Marquez is domiciled in Oakland, California.  On or around 2008, Plaintiff Marquez created a Facebook account.  In August 2022, Plaintiff Marquez visited rackroomshoes.com.  Upon accessing the website, Plaintiff Marquez navigated the website, clicking on items for purchase.  Although unaware at the time, Plaintiff Marquez is informed and believes that Defendant assisted Facebook with intercepting his communications, including communications that contained his personally identifiable information.

5.    Rack Room Shoes, Inc. is headquartered in Charlotte, North Carolina.  Rack Room Shoes, Inc. does business throughout California and the United States.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action

---

[1] ABOUT US, RACK ROOM SHOES (July 9, 2023), *available at* https://www.rackroomshoes.com/about-us.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    1

where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, are citizens of different states than Defendant. This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Defendant because Defendant purposefully availed themselves of this forum by conducting substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.   Facebook's Platform and its Business Tools**

9. Facebook describes itself as a "real identity platform,"[2] meaning users are allowed only one account and must share "the name they go by in everyday life."[3] To that end, when creating an account, users must provide their first and last name, along with their birthday and gender.[4]

10. In 2021, Facebook generated $117 billion in revenue.[5] Roughly 97% of that came from selling advertising space.[6]

---

[2] Sam Schechner and Jeff Horwitz, *How Many Users Does Facebook Have? The Company Struggles to Figure It Out*, WALL. ST. J. (Oct. 21, 2021).

[3] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity.

[4] FACEBOOK, SIGN UP, https://www.facebook.com/

[5] FACEBOOK, META REPORTS FOURTH QUARTER AND FULL YEAR 2021 RESULTS, https://investor.fb.com/investor-news/press-release-details/2022/Meta-Reports-Fourth-Quarter-and-Full-Year-2021-Results/default.aspx

[6] *Id.*

11. Facebook sells advertising space by highlighting its ability to target users.[7] Facebook can target users so effectively because it surveils user activity both on and off its site.[8] This allows Facebook to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "connections."[9] Facebook compiles this information into a generalized dataset called "Core Audiences," which advertisers use to apply highly specific filters and parameters for their targeted advertisements.[10]

12. Advertisers can also build "Custom Audiences."[11] Custom Audiences enables advertisers to reach "people who have already shown interest in [their] business, whether they're loyal customers or people who have used [their] app or visited [their] website."[12] With Custom Audiences, advertisers can target existing customers directly, and they can also build a "Lookalike Audiences," which "leverages information such as demographics, interests, and behavior from your source audience to find new people who share similar qualities."[13] Unlike Core Audiences, advertisers can build Custom Audiences and Lookalike Audiences only if they first supply Facebook with the underlying data. They can do so through two mechanisms: by manually uploading contact information for customers, or by utilizing Facebook's "Business Tools."[14]

---

[7] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https://www.facebook.com/business/help/205029060038706.

[8] FACEBOOK, ABOUT FACEBOOK PIXEL, https://www.facebook.com/business/help/742478679120153?id=1205376682832142.

[9] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.

[10] FACEBOOK, EASIER, MORE EFFECTIVE WAYS TO REACH THE RIGHT PEOPLE ON FACEBOOK, https://www.facebook.com/business/news/Core-Audiences.

[11] FACEBOOK, ABOUT CUSTOM AUDIENCES, https://www.facebook.com/business/help/744354708981227?id=2469097953376494.

[12] FACEBOOK, AD TARGETING, HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.

[13] Facebook, About Lookalike Audiences, https://www.facebook.com/business/help/164749007013531?id=401668390442328.

[14] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097953376494; Facebook, Create a Website Custom Audience, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494.

13. As Facebook puts it, the Business Tools "help website owners and publishers, app developers and business partners, including advertisers and others, integrate with Facebook, understand and measure their products and services, and better reach and serve people who might be interested in their products and services."[15] Put more succinctly, Facebook's Business Tools are bits of code that advertisers can integrate into their website, mobile applications, and servers, thereby enabling Facebook to intercept and collect user activity on those platforms.

14. The Business Tools are automatically configured to capture certain data, like when a user visits a webpage, that webpage's Universal Resource Locator ("URL") and metadata, or when a user downloads a mobile application or makes a purchase.[16] Facebook's Business Tools can also track other events. Facebook offers a menu of "standard events" from which advertisers can choose, including what content a visitor views or purchases.[17] Advertisers can even create their own tracking parameters by building a "custom event."[18]

15. One such Business Tool is the Facebook Tracking Pixel. Facebook offers this piece of code to advertisers, like Rack Room Shoes, to integrate into their website. As the name implies, the Facebook Tracking Pixel "tracks the people and type of actions they take."[19] When a user accesses a website hosting the Facebook Tracking Pixel, Facebook's software script surreptitiously directs the user's browser to send a separate message to Facebook's servers. This second, secret transmission contains the original GET request sent to the host website, along with additional data that the Pixel is configured to collect. This transmission is initiated by Facebook code and

---

[15] FACEBOOK, THE FACEBOOK BUSINESS TOOLS, https://www.facebook.com/help/331509497253087.

[16] *See* FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED, https://developers.facebook.com/docs/facebook-pixel/advanced/; *see also* FACEBOOK, BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142; FACEBOOK, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

[17] FACEBOOK, SPECIFICATIONS FOR FACEBOOK PIXEL STANDARD EVENTS, https://www.facebook.com/business/help/402791146561655?id=1205376682832142.

[18] FACEBOOK, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005?id=1205376682832142; *see also* FACEBOOK, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

[19] FACEBOOK, RETARGETING, https://www.facebook.com/business/goals/retargeting.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                                    4

concurrent with the communications with the host website. Two sets of code are thus automatically run as part of the browser's attempt to load and read Defendant's website—Defendant's own code, and Facebook's embedded code.

16. An example illustrates the point. Take an individual who navigates to Defendant's website and clicks on a tab to browse shoes. When that tab is clicked, the individual's browser sends a GET request to Defendant's server requesting that server to load the particular webpage. Because Rack Room Shoes utilizes the Facebook Tracking Pixel, Facebook's embedded code, written in JavaScript, sends secret instructions back to the individual's browser, without alerting the individual that this is happening. Facebook causes the browser to secretly duplicate the communication with Defendant, transmitting it to Facebook's servers, alongside additional information that transcribes the communication's content and the individual's identity.

17. After collecting and intercepting this information, Facebook processes it, analyzes it, and assimilates it into datasets like Core Audiences and Custom Audiences.

**B.    Rack Room Shoes and the Facebook Tracking Pixel**

18. Defendant owns and operates rackroomshoes.com.

19. Defendant integrates the Facebook Tracking Pixel into its website.

<u>Figure 1</u>



20. Defendant's Pixel captures event data called "PageView."

Figure 2



21. PageView transmits the URL accessed.

Figure 3

22. Defendant's Pixel also captures event data called "Microdata."

Figure 4

[Figure 4: Screenshot showing "Microdata Automatically Detected" with Custom Parameters Sent including DataLayer, JSON-LD containing product data for Nike Mens Court Legacy Low Sneaker - White, SKU 601132, price $69.99, from rackroomshoes.com]

23. Microdata discloses the name of the item browsed, along with descriptors about the item, like the brand, color, and style.

24. Defendant's Pixel captures event data called "ViewContent."

Figure 5



[Figure 5: Screenshot showing "ViewContent" with Custom Parameters Sent: content_ids: 601132, content_type: product_group, currency: USD, value: 69.99]

25. ViewContent discloses the item's "id," "type," and "price."

26. Defendant's Pixel captures event data called "AddToCart."

Figure 6

```
▼ ⊘ AddToCart

CUSTOM PARAMETERS SENT

content_ids: 601132
content_name: Hide
    White Nike Mens Court Legacy Low Sneaker
content_type: product_group
currency: USD
value: 69.99

EVENT INFO

Setup Method: Manual
URL called: Show
Load Time: 78.37 ms
Pixel Location: Show
```

27. AddToCart discloses the item's "name," "type," and "value."

28. Defendant's Pixel captures event data called "Button Click."

Figure 7

```
▼ ⚡ Button Click Automatically Detected ⓘ

CUSTOM PARAMETERS SENT

buttonFeatures: Hide
    {"classList":"btn btn-default js-add-to-cart","destinatio
    n":"https://www.rackroomshoes.com/p/court-legacy-low-sneak
    er/601132#","id":"","imageUrl":"","innerText":"ADD TO CAR
    T","numChildButtons":0,"tag":"button","type":"submit","nam
    e":"","value":""}
buttonText: ADD TO CART
formFeatures: Hide
    [{"id":"","name":"","tag":"button"},{"id":"","name":"","ta
    g":"select"},{"id":"","name":"","tag":"button"},{"id":"loc
    ationQuery","name":"locationQuery","tag":"input","placehol
    der":"Enter a City or Zip Code","inputType":"text","valueM
    eaning":"empty"},{"id":"","name":"","tag":"button"},{"i
    d":"","name":"","tag":"button"},{"id":"","name":"","ta
    g":"button"},{"id":"","name":"","tag":"button"}]
pageFeatures: Hide
    {"title":"White Nike Mens Court Legacy Low Sneaker | Susta
    inable Material | Rack Room Shoes"}
```

29. Button Click registers when a user clicks a button and captures that button's name and the name of webpage on which it was located.

30. As the above figures show, when users access and navigate Defendant's websites, the Pixel will capture event data revealing the content of their communications.

31. Defendant's Pixel pairs this event data with a user's personally identifiable information.

32. When a user accesses Defendant's websites while logged into Facebook, the Pixel will compel that user's browser to transmit the c_user cookie, which contains the user's unencrypted Facebook ID. When accessing rackroomshoes.com, for example, Facebook receives eight cookies:

Figure 8

| fr | 0MHtdO0qGy7e... | .facebook.com |
| xs | 49%3AhfGww3j... | .facebook.com |
| c_user | 1000359660745... | .facebook.com |
| datr | Xax4ZN7fmZ3x... | .facebook.com |
| presence | C%7B%22t3%22... | .facebook.com |
| sb | SRYxY1fMNfxArj... | .facebook.com |
| wd | 1335x951 | .facebook.com |
| _fbp | fb.1.1688946250... | .rackroomshoes.com |

33. When a visitor's browser has recently logged out of an account, Facebook compels the visitor's browser to send a smaller set of cookies.

Figure 9

| fr | 0MHtdO0qGy7e... | .facebook.com |
| wd | 1335x951 | .facebook.com |
| datr | Xax4ZN7fmZ3x... | .facebook.com |
| sb | SRYxY1fMNfxArj... | .facebook.com |
| _fbp | fb.1.1688946250... | .rackroomshoes.com |

34. No matter the circumstances, at a minimum, Facebook receives at least one cookie from a visitor's browser.

Figure 10

| _fbp | fb.1.1688946250... | .rackroomshoes.com |

35. The fr cookie contains, at least, an encrypted Facebook ID and browser identifier.[20] The _fbp cookie contains, at least, an unencrypted value that uniquely identifies a browser.[21] The datr cookies also identifies a browser. Facebook, at a minimum, uses the fr and _fbp cookies to identify users.[22]

36. The fr cookie expires after 90 days unless the visitor's browser logs back into Facebook.[23] If that happens, the time resets, and another 90 days begins to accrue.[24]

37. The _fbp cookie expires after 90 days unless the visitor's browser accesses the same website.[25] If that happens, the time resets, and another 90 days begins to accrue.[26]

38. The Facebook Tracking Pixel uses both first- and third-party cookies. A first-party cookie is "created by the website the user is visiting"—*i.e.*, Rack Room Shoes.[27] A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—*i.e.*, Facebook.[28] The _fbp cookie is always transmitted as a first-party cookie. A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.

---

[20] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf.

[21] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[22] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[23] *See* FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[24] Confirmable through developer tools.

[25] *See* FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[26] Also confirmable through developer tools.

[27] PC MAG, FIRST-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/first-party-cookie. This is confirmable by using developer tools to inspect a website's cookies and track network activity.

[28] PC MAG, THIRD-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/third-party-cookie. This is also confirmable by tracking network activity.

39. Facebook, at a minimum, uses the fr, _fbp, and c_user cookies to link to Facebook IDs and corresponding Facebook profiles.

40. Defendant uses these cookies to pair event data with personally identifiable information so it can later retarget consumers on Facebook.

41. Defendant also uses its Pixel to capture identifiers that a user enters into form fields. This information is "hash," meaning it is "[a] computed summary of digital data that is a one-way process."[29] It other words, it "cannot be reversed back into the original data."[30]

42. When a user creates an account, for example, Defendant's Pixel captures the user's email address.

Figure 11

```
▼ ⚡ Button Click Automatically Detected ⓘ
CUSTOM PARAMETERS SENT
buttonFeatures: Hide
  {"classList":"os-checkout-btn","destination":"https://www.rackroomshoes.com/login/checkout/guest","id":"","imageUrl":"","innerText":" Checkout as a Guest","numChildButtons":1,"tag":"div","type":null}
buttonText: Checkout as a Guest
formFeatures: Hide
  [{"id":"guest.email","name":"email","tag":"input","inputType":"text"},{"id":"","name":"","tag":"button"},{"id":"","name":"CSRFToken","tag":"input","inputType":"hidden"}]
pageFeatures: Hide
  {"title":"Proceed to Checkout"}
parameters: []
```

43. When a user checks out as a guest, Defendant's Pixel captures the user's first name, last name, email, and phone number.

44. By integrating the Facebook Tracking Pixel, Defendant assists Facebook with pairing these identifiers with event data.

45. Upon information and belief, Defendant uses other Business Tools, like Conversions API, to assist Facebook with intercepting its users' communications.

---

[29] Definition of Hash, www.pcmag.com/encyclopedia/term/hash.
[30] *Id.*

**C.     Defendant Never Receives Users' Consent**

46.     To each user that accesses its website, Defendant expressly warrants that it will not assist a third party with intercepting communications that are paired with personally identifiable information.

Figure 12



47.     As Figure 12 demonstrates, Defendant says that "targeting cookies" "do not store directly personal information, but are based on uniquely identifying your browser and internet device."

48.     Defendant's Privacy Policy, which users must accept before making a purchase, reinforces that warranty, stating that "[o]ur usage of cookies is in no way linked to any Personal Information while on our site."

Figure 13

Cookies
A cookie is a piece of data stored on the hard drive of your computer, containing information about you. Our usage of cookies is in no way linked to any Personal Information while on our site. Cookies can make the browsing experience easier. For instance, by accepting a cookie from our site, we can provide you a more personalized experience while shopping, thereby saving time while on our site. Most browsers can be set to reject cookies or to ask you if you want to accept/reject an incoming cookie. If you reject the cookie, you may still use our site, although you will be limited in some areas of our site. Cookies can also enable us to track and target the interests of our customers to enhance the experience on our site.

49.     As courts across the country have recognized, however, the identifiers that Defendant's Pixel captures—Facebook ID, email address, first name, last name, and phone

number—constitute "directly personal information." By capturing this information anyway, Defendant fails to receive consent from visitors to intercept their communications.

50. Facebook confirms that it eavesdrops on communications between Defendant and visitors.

Figure 14

```
Activity received from rackroomshoes.com

ID          577593229294108
Event       PURCHASE
Received on
January 3, 2023 at 2:24 PM

ID          577593229294108
Event       VIEW_CONTENT
Received on
January 3, 2023 at 2:06 PM

ID          577593229294108
Event       VIEW_CONTENT
Received on
January 3, 2023 at 1:53 PM
```

## CLASS ALLEGATIONS

51. Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated pursuant to the provision of Code of Civil Procedure § 382 and Civil Code § 1781. Plaintiff seeks certification of the following class (the "Class"): All persons in California who have a Facebook account and accessed and navigated www.rackroomshoes.com.

52. Plaintiff reserves the right to modify the class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

53. <u>Numerosity of the Class</u>: The Class is composed of at least thousands of individuals, the joinder of which in one action would be impracticable. The disposition of their claims through this class action will benefit both the parties and the Court.

54. <u>Existence and Predominance of Common Questions of Fact and Law</u>: There is a well-defined community of interest in the questions of law and fact involved affecting the members of the proposed Class. The questions of law and fact common to the proposed Class predominate over questions affecting only individual class members. Such questions include, but are not limited to, the following: whether Defendant's disclosure of personally identifiable information violated the laws and statutes at issue herein, whether Plaintiff and the proposed Class members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit, and whether Defendant should be enjoined from similar conduct in the future.

55. <u>Typicality</u>: Plaintiff is asserting claims that are typical of the proposed Class members' claims, having accessed and browsed Defendant's website, www.rackroomshoes.com. Plaintiff and the proposed Class members have similarly suffered harm arising from Defendant's violations of the law, as alleged herein.

56. <u>Adequacy</u>: Plaintiff is an adequate representative of the proposed Class. Their interests do not conflict with, and are not antagonistic to, the interests of the members of that Class. They will fairly and adequately represent and protect the interests of the Class.

57. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's and the proposed Class members' claims. Plaintiff and Class members have suffered irreparable harm as a result of Defendant's unfair, unlawful, and unconscionable conduct. Because of the size of the individual Class members' claims, few, if any, proposed Class members could afford to seek legal redress for the wrongs complained of herein. Absent the class action, the proposed Class members will continue to suffer losses and the violations of law described herein will continue without remedy, and Defendant will be permitted to retain the proceeds of their misdeeds. Defendant continues to engage in the unlawful, unfair, and unconscionable conduct that is the subject of this Complaint.

**COUNT I**
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 631**

58. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

59. Plaintiff brings this claim individually and on behalf of the members of the putative Class against Defendant.

60. The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638. The Act begins with its statement of purpose.

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630.

61. California penal Code § 631(a) provides, in pertinent part:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner … willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or **who aids, agrees with, employs, or conspires** with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500).

62. A defendant must show it had the consent of <u>all</u> parties to a communication.

63. At all relevant times, Defendant aided, agreed with, and conspired with Facebook to track and intercept Plaintiff's and Class members' internet communications while accessing its website. Defendant assisted these interceptions without first receiving authorization or consent from Plaintiff and Class members.

64. Defendant, when aiding and assisting Facebook's eavesdropping, intended to help Facebook learn some meaning of the content in the URLs and the content the visitor requested.

65. The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, the Facebook Tracking Pixel falls under the broad catch-all category of "any other manner":

   a. The computer codes and programs Facebook used to track Plaintiff's and the Class members' communications while they were navigating Defendant's website;

   b. The Plaintiff's and Class member's browsers;

   c. The Plaintiff's and Class members' computing and mobile devices;

   d. Facebook's web and ad servers;

   e. The web and ad-servers from which Facebook tracked and intercepted the Plaintiff's and Class members' communications while they were using a web browser to access or navigate Defendant's website;

   f. The computer codes and programs used by Facebook to effectuate its tracking and interception of the Plaintiff's and Class members' communications while they were using a browser to visit Defendant's website; and

   g. The plan Facebook carried out to effectuate its tracking and interception of the Plaintiff's and Class members' communications while they were using a web browser or mobile application to visit Defendant's website.

66. Pursuant to California Penal Code § 637.2, Plaintiff and Class members have been injured by the violation of California Penal Code § 631 and each seek damages for the greater of $5,000 or three times the actual amount of damages, as well as injunctive relief.

**COUNT II**
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 632**

67. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

68. Plaintiff brings this Count individually and on behalf of the members of the putative Class.

69. The data collected on Defendant's websites constitute "confidential communications," as that term is used in Section 632, because class members had objectively reasonable expectations of privacy with respect to their personally identifiable information.

70. Defendant is liable for aiding and abetting violations of Section 632 by Meta and other third-party vendors.

71. Pursuant to Cal. Penal Code § 637.2, Plaintiff and class members have been injured by the violations of Cal. Penal Code § 635, and each seek damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a. For an order certifying the putative Class and naming Plaintiff as the representatives of the putative Class and Plaintiff's attorneys as Class Counsel to represent the putative Class members;

b. For an order declaring that the Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the putative Class on all counts asserted herein;

d. For statutory damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For injunctive relief as pleaded or as the Court may deem proper; and

g. For an order awarding Plaintiff and the putative Class their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated:  August 1, 2023            **BURSOR & FISHER, P.A**.

By:   /s/ L. Timothy Fisher
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
　　　　ehorne@bursor.com

*Attorneys for Plaintiff*